Tanya L. Forsheit, Bar No. 192472
*tforsheit@bakerlaw.com*
Daniel M. Goldberg, Bar No. 280718
*dgoldberg@bakerlaw.com*
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859

Paul G. Karlsgodt
*pkarlsgodt@bakerlaw.com*
Casie D. Collignon
*ccollignon@bakerlaw.com*
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202-2662
Telephone: 303.861.0600
Facsimile: 303.861.7805

Attorneys for Defendants
Sprouts Farmers Market, Inc. and SFM, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BEVERLY PORRAS and LETICIA STOCKS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPROUTS FARMERS MARKET, INC.; SFM, LLC; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 5:16-cv-01005-JGB-KKx<br><br>[Honorable Jesus G. Bernal]<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>[Filed Concurrently with Declarations of Paul Karlsgodt and Jay R. Andrews in Support of Opposition to Plaintiffs' Motion to Remand]<br><br>Date: July 11, 2016<br>Time: 9:00 a.m.<br>Judge: Hon. Jesus G. Bernal<br>Location: Courtroom No. 1 |

## I. INTRODUCTION

Plaintiffs Beverly Porras and Leticia Stocks ("Plaintiffs") filed this proposed class action against Sprouts Farmers Market, Inc. and SFM, LLC ("Defendants"), seeking relief on behalf of all current and former employees of Defendants in the State of California whose personal or financial information was compromised as a result of an incident in March 2016 in which the IRS W-2 forms for Sprouts employees, including 8,719 California residents, were sent to unknown criminals in response to a phishing scam (the "W-2 Incident"). This is one of four putative class action lawsuits arising out of the W-2 Incident. Two of the other lawsuits were originally filed in federal court: *Price, et al. v. Sprouts Farmers Market, Inc. d/b/a Sprouts Farmers Market, LLC*, 1:16-cv-00855, United States District Court for the District of Colorado (transferred to D. Ariz., CV-16-2047-PHX-DLR); *Hernandez, et al. v. Sprouts Farmers Market, Inc. et al.*, Case No. 3:16-CV-0958-CAB-DHB, United States District Court, Southern District of California. A third lawsuit was filed in the Superior Court for the County of San Diego, California, but has since been removed to the United States District Court for the Southern District of California: *Castellano, et al. v. Sprouts Farmers Market, Inc. et al.*, Case No. 3:16-CV-01184-CAB-DHB. The plaintiff in the *Price* case recently filed a petition with the Judicial Panel on Multidistrict Litigation seeking to centralize all of the cases into a single federal forum.

Sprouts timely removed this putative class action to this Court from the Superior Court for Riverside County, California under the Class Action Fairness Act of 2005 ("CAFA"). Plaintiffs now move to remand, challenging the factual basis for several of the facts pled in the Notice of Removal. As set forth in the attached declarations and as explained below, the amount in controversy calculation in the Notice of Removal is factually supported and demonstrates that there is at least $5 million in controversy in this case. The motion to remand must be denied.

## II. LEGAL STANDARD

When a defendant removes an action pursuant to CAFA, the "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" of $5 million. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 549 (2014). Where a plaintiff has challenged the amount in controversy asserted by a defendant, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 554. Courts must construe CAFA "with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id*. A removing defendant will inevitably rely on some assumptions to support removal and is not required to go so far as to prove the plaintiff's case for him. *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015). Once federal jurisdiction has been established under CAFA, the party seeking remand bears the burden of proof. *See Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013)).

## III. ARGUMENT

### A. **The Attached Declaration of Jay Andrews Establishes that the Proposed Class Consists of 8,721 Persons.**

Plaintiffs first argue that the calculation of the number of class members set forth in the Notice of Removal is factually unsupported. However, as recently held by the Supreme Court in *Dart Cherokee*, defendants are not required to submit declarations and other evidentiary materials with a Notice of Removal. Instead, at that stage, a defendant is only required to plead facts that plausibly support the conclusion that the jurisdictional threshold has been satisfied. Here, defendant met that standard by pleading the specific number of California residents who were affected by the W-2 incident, or 8,719. That number is confirmed by the attached Declaration of Jay Andrews, which confirms without qualification that there were

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

8,719 California residents included among the affected employees who were sent notification about the W-2 Incident. *See Williams v. Bestcomp, Inc.*, No. 6:11-CV-00050, 2011 WL 4499427, at *4-5 (W.D. La. Sept. 26, 2011) (finding an affidavit to be admissible evidence regarding citizenship of the class members, since the affidavit was based on the personal knowledge of the affiant, who "made a personal review of the addresses to which her employer mailed class notices in related class actions.").

Plaintiff offers a lower estimate of the number of affected California residents based on information obtained from Defendants' 2015 annual financial report. However, this mere estimate is meaningless in the face of the Andrews Declaration, which sets forth a *count* of the actual number of California residents, not an estimate of that number. Because Defendants have provided an actual account of the number of California residents, they have met their burden of establishing that fact by a preponderance of the evidence that cannot be overcome by a contrary estimate that is not grounded in real evidence. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015) ("CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure.").

**B.    The Cost of Three or More Years of Credit Monitoring Is a Reasonable Method of Estimating the Minimum Amount of Damages Being Sought In the Complaint.**

Plaintiffs' second argument attempts to call into question the factual information supporting Defendants' amount in controversy calculations, which used an assumption that plaintiffs were seeking compensation for at least three years of credit monitoring at $15.95 per month to demonstrate that there was at least $5 million in controversy.

///

4

Plaintiffs do not contest in their motion to remand that the $15.95 per month figure is a reasonable estimate of the monthly costs of credit monitoring and identity theft protection for which they seek to recover damages.  (*See also* Karlsgodt Declaration ¶ 8 (summarizing typical prices charged for identity theft protection and credit monitoring products)).  Instead, they argue that this figure should be multiplied by no more than two years in calculating the amount in controversy because Sprouts offered one year of free credit monitoring services to affected individuals.  The fallacy in this argument is that plaintiffs' Complaint does not limit the credit monitoring for which they seek reimbursement to only three years.  That three-year figure was included in the Notice of Removal by Defendants as an illustration of the ***minimum*** amount number of years necessary to bring the potential damages exposure represented by plaintiffs prayer for credit monitoring/identity theft protection damages above $5 million.  It is not a limitation pled by plaintiffs in their Complaint.

Indeed, the Complaint contains no cap at all on the number of years of credit monitoring for which plaintiffs will seek reimbursement, and the amount they will seek is likely far greater than three years.  (*See* First Am. Compl. ¶¶ 49, 58, 67, 72, 85, and 97 (claiming injuries relating to, among other things, "finding and buying services to prevent identity theft and monitor their credit," without time limitation); *Id.* at 21 (Prayer for Relief) (seeking compensatory, economic, and special damages, without limitation)).  Far from limiting the amount of credit monitoring plaintiffs are seeking to only two years, the Complaint is completely unrestricted, leaving them free to request compensation for credit monitoring and identity theft protection for a far greater period than three years.

By comparison, in *Price*, another putative class action that was originally filed in the U.S. District Court for the District of Colorado on behalf of Sprouts employees affected by the same W-2 incident, plaintiffs' counsel estimated credit monitoring damages at $25 per month for 30 years, or $9,000 per putative class

5

member, or $189 million total for a proposed class consisting of all Sprouts employees nationwide.  (*See* Karlsgodt Declaration ¶ 7 & Ex. A).  Even taking into account that the proposed class in this case consists only of California employees, using the same damages methodology proposed by the plaintiff in *Price* would yield an amount in controversy of more than $78 million in this case.

The applicable standard only requires the Defendants to provide a calculation based on a chain of reasoning resting on reasonable assumptions demonstrating that the damages exposure exceeds $5 million.  *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202-03 (9th Cir. 2015).  The calculation set forth in the Notice of Removal, as supported by the Declarations filed contemporaneously with this response, easily satisfies this standard.  Therefore, the Motion to Remand must be denied.

### C. A Possible Attorneys' Fee Award of 25% Can Be Taken Into Account in Evaluating the Amount in Controversy.

Citing *Ibrahim v. Marriott Int'l, Inc.*, 2014 U.S. Dist. LEXIS 103008, 3 (C.D. Cal. July 28, 2014), plaintiffs argue that any attempted accretion of attorney's fees onto the amount of controversy should be discarded because Defendants made no actual assertion quantifying potential attorney's fees, either as an amount or percentage, in the Notice of Removal.  *Ibrahim* is distinguishable, however, because it was a decision on a motion to remand a case removed under traditional diversity grounds, not under the CAFA.  This is important because as stated by the Supreme Court in *Dart Cherokee*, there is no anti-removal presumption to cases invoking CAFA and courts must construe CAFA "with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." 135 S. Ct. at 549, 550.

Instead, "where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Garnett v. ADT LLC*, 74 F. Supp. 3d 1332, 1337 (E.D.

Cal. 2015) (citing *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007)). In common fund cases, the Ninth Circuit has approved a "benchmark" percentage of 25% when considering what percentage of a fund to award in reasonable attorneys' fees. *See id.*; *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). In their Complaint, plaintiffs specifically seek attorney's fees under California Civil Code Section 1798.84(g). It is reasonable to assume that if they are successful in obtaining class-wide relief, plaintiffs will seek a fee award of at least 25% of the aggregate amount of any compensatory damages awarded to the class. Thus, as long as the amount of aggregated compensatory damages sought in the complaint is greater than $4 million, the reasonable possibility of a 25% attorneys' fee award brings the amount in controversy to the $5 million threshold.[1]

## IV. CONCLUSION

Defendants have met their burden of establishing jurisdiction because they have submitted declarations supporting the conclusion on a preponderance of the evidence that plaintiffs are seeking damages that could exceed $5 million in the aggregate on behalf of the proposed class. Plaintiffs cannot overcome this showing by establishing that the amount in controversy cannot exceed $5 million. Therefore, this Court has diversity jurisdiction under CAFA, and the motion to remand should be denied.

DATED: June 27, 2016

BAKER & HOSTETLER LLP

By: /s/ Tanya L. Forsheit
    Tanya L. Forsheit
    Daniel M. Goldberg

Attorneys for Defendants
Sprouts Farmers Market, Inc. and SFM, LLC

---

[1] The amount in controversy can also include the costs to the defendant in complying with an injunction, which can be a sizeable amount. *Vasquez v. Blue Cross of California,* No. CV-15-2055-MWF AGRX, 2015 WL 2084592, at *3 (C.D. Cal. May 5, 2015).